**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| NELSON ROY WESLEY, | ) | CASE NO. 1:19-CV-01232-DCN |
| Plaintiff, | ) | |
| | ) | U.S. DISTRICT JUDGE |
| v. | ) | DONALD C. NUGENT |
| | ) | |
| CORPORAL EDWARD LAWLER, | ) | U.S. MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| Defendants, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

**I.     INTRODUCTION**

Now pending before the Court is Defendant Sergeant Edward Lawler's ("Sergeant Lawler") Motion for Summary Judgment (ECF No. 59).[1] This matter is before me pursuant to U.S. District Court Judge Donald C. Nugent's order of referral for general pretrial supervision, including the preparation of reports and recommendation for the disposition of case dispositive motions.[2] (ECF No. 5; *see* ECF non-document entry dated September 6, 2022.) For the following reasons, I RECOMMEND that the Court GRANT Sergeant Lawler's Motion for Summary Judgment.

**II.     PROCEDURAL AND FACTUAL BACKGROUND**

On May 30, 2019, Mr. Wesley filed a Complaint seeking $12.5 million in damages as a result of several alleged civil rights violations against him on the part of the Cuyahoga County Sheriff's Department, former Cuyahoga County Sheriff Clifford Pinkney, the Cuyahoga County

---

[1] Sergeant Lawler was a corporal at the time the Complaint is filed, but he is now a sergeant. (ECF No. 59-1, PageID #468.)

[2] This matter was before Magistrate Judge William H. Baughman, Jr. pursuant to an order of reference issued by Judge Nugent on October 21, 2019. (ECF No. 5.) Due to Magistrate Judge Baughman's retirement, this case was referred to me pursuant to General Order 2022-14.

1

Corrections Center ("CCCC"), former CCCC Jail Administrator Kenneth Mills, former CCCC Warden Eric Ivey, Cuyahoga County Executive Armond Budish, Cuyahoga County IT Administrator Emily McNeeley, and CCCC Corporal – now Sergeant – Edward Lawler. (ECF No. 1.) Mr. Wesley was a pretrial detainee at the CCCC at the time he filed his Complaint.

On October 21, 2019, the Court dismissed all of Mr. Wesley's claims except his retaliation claim against Sergeant Lawler. (ECF No. 4, PageID#28-29.) Specifically, the Court stated that Mr. Wesley's Complaint at the pleading stage had sufficiently alleged a plausible claim for retaliation based on Mr. Wesley's allegation that he filed a grievance against Sergeant Lawler for taking Mr. Wesley's notes, taking his mattress, and "forcing him to sleep on the concrete slab for two days." (*Id.* at PageID#28.)

In support of his retaliation claim, Mr. Wesley alleges that on May 9, 2019, Sergeant Lawler and another corrections officer (later identified as Correction Officer Joseph Johnston, "Officer Johnston"), came to his cell, woke him up, and served him with a subpoena from the State of Ohio that requested all personal papers, effects, and handwritten materials in Mr. Wesley's cell. (ECF No. 1, PageID#3; *see* Wesley Dep. 26:14-21.) Mr. Wesley alleges that, as he waited outside his cell, Sergeant Lawler and Officer Johnston were inside the cell searching for materials responsive to the subpoena. (*See* Wesley Dep. 28:13-25; 25:1-5.) During Sergeant Lawler's search of the cell, Sergeant Lawler instructed Officer Johnston to remove Mr. Wesley's mattress. (*Id.* at 28:10-12; ECF No. 1, PageID#4.)

Mr. Wesley and Sergeant Lawler were standing near Officer Johnston's desk after the mattress was removed, and Mr. Wesley complained that Sergeant Lawler was taking his legal work. (*See* Wesley Dep. 25:6-8.) Mr. Wesley also alleges that he complained to Sergeant Lawler regarding the subpoena and the mattress at this time. (*See* Wesley Dep. 28:16-20.) Mr. Wesley was

2

unable to recall whether Officer Johnston or Sergeant Lawler said anything to him or to each other about taking Mr. Wesley's mattress. (*See* Wesley Dep. 28:23-25, 29:1-8.) Mr. Wesley, as well as Officer Johnston, all agree that there did not appear to be any hostility or anger between Mr. Wesley and Sergeant Lawler during the execution of the subpoena. (*See* Wesley Dep. 22:1-6; Johnston Decl. ¶7.)

On May 11, 2019, while Corporal Barry Hickerson was doing his rounds at CCCC, Mr. Wesley informed Corporal Hickerson that Mr. Wesley had been without a mattress since May 9, 2019. (*See* Wesley Dep. 32:1-7.) Corporal Hickerson told Mr. Wesley that he would obtain a mattress for him and personally delivered the mattress to him that same day. (*See* Hickerson Decl. ¶ 5; *see also* Wesley Dep. 31:19-25; 32:1-15.) Mr. Wesley was thus without a mattress for two nights and three days. (*See* Wesley Dep. 42:7-9; 42: 22-24; 43:1; ECF No. 1, PageID#4, ECF No. 62, PageID#500.)

Mr. Wesley filed a grievance regarding the seizure of the mattress, but he was unable to recall in his deposition whether he filed this grievance before or after Corporal Hickerson provided him with a mattress. (*See* Wesley Dep. 35:16.) Mr. Wesley estimated that he filed between 10 to 15 grievances while being held as a pretrial detainee at the CCCC in 2019. (*See* Wesley Dep. 86:12-13.)

Mr. Wesley's grievance regarding the removal of his mattress and legal paperwork was dated May 10, 2019. (ECF No. 59-2, PageID#482.) Documentation from the Cuyahoga County Sheriff's Department states that Mr. Wesley sent the grievance on May 21, 2019, and the grievance was received on June 5, 2019. (ECF No. 59-2, PageID#481; ECF No. 59-3, PageID#484.) On June 7, 2019, Mr. Wesley's grievance was relayed to Corrections Staff, and staff members inquired about the status of Mr. Wesley's written material and mattress. (ECF No. 59-2, PageID#483.) That

3

same day, a staff member confirmed that Mr. Wesley had a mattress, and that his written materials were returned to him after being photocopied. (*Id.*)

### III. LAW & ANALYSIS

#### A. *Standard of Review*

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy., Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy, Inc.*, 39 F.3d at 1347.

The Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to designate specific facts or evidence in dispute, and if the nonmoving party

fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson,* 477 U.S. at 251-52).

### B. *Mr. Wesley's Retaliation Claim*

Sergeant Lawler argues that he is entitled to summary judgment because "even assuming the story that [Mr.] Wesley alleges that [Sergeant] Lawler took his mattress during a search of his cell pursuant to an improper subpoena, [Mr.] Wesley is unable to establish a retaliation claim against [Sergeant] Lawler." (ECF No. 59-1, PageID#470.) Sergeant Lawler further argues that his conduct in taking Mr. Wesley's mattress during a search of his cell is not a violation of Mr. Wesley's constitutional rights. (*Id.* at PageID#470-71.)

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish a First Amendment retaliation claim, a plaintiff must establish the following three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taking against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

#### 1. <u>Mr. Wesley did not engage in protected conduct.</u>

An inmate has a First Amendment right to file non-frivolous grievances. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). It is well-established that "retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of

5

grievances" and is therefore actionable under Section 1983. *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). Mr. Wesley contends that he engaged in protected conduct when he: (1) complained to Sergeant Lawler regarding the subpoena not being self-executing following the search of his cell and seizure of his mattress; and (2) sent a written grievance regarding the subpoena and Sergeant Lawler taking his mattress. (*See* Wesley Dep. 25:6-8; 33:1-19.)

Mr. Wesley's actions do not rise to the level of protected conduct. Mr. Wesley's claim is that Sergeant Lawler took his mattress because he complained about the subpoena's execution. On its face, filing a grievance, either oral or written, is protected conduct for an inmate. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). But based on the undisputed facts here, both Mr. Wesley's verbal complaint and follow-up grievance—the alleged protected conduct—occurred *after* the mattress was removed and did not result in any CCCC official, including Sergeant Lawler, retaliating against him. Accordingly, Mr. Wesley cannot satisfy the first element of his retaliation claim.

### 2. The alleged adverse action would not deter an inmate of "ordinary firmness" from continuing to engage in the protected conduct.

As to the second element of Mr. Wesley's retaliation claim, Sergeant Lawler argues that Mr. Wesley cannot show that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in protected conduct. To satisfy this element, the plaintiff must establish that the adverse action is one that would "deter a person from ordinary firmness" from the exercise of the right at stake. *Thaddeus-X*, 175 F.3d at 396. The plaintiff does not have to show actual deterrence. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005). Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

6

While a plaintiff is not required to show "solely egregious" actions, "[a] chilling effect sufficient under this prong is not born of *de minimis* threats or inconsequential actions…." *Ctr. For Bio-Ethical Reform, Inc. v. City of Springsboro*, 477 F.3d 807, 822 (6th Cir. 2007) (internal quotations omitted).

Here, Mr. Wesley alleges that he was deprived of a mattress for three days and two nights. (*See* ECF No. 1, PageID#4, ECF No. 62, PageID#500; Wesley Dep. 42:7-9; 42: 22-24; 43:1.) Yet a three-day deprivation of a mattress is not an adverse action that would deter an inmate of "ordinary firmness" from continuing to engage in the protected conduct of filing grievances. Indeed, courts in the Sixth Circuit have found that periods of mattress deprivation far exceeding that of Mr. Wesley's were not sufficiently adverse to deter a person of "ordinary firmness" from engaging in protected conduct. *Lee v. Wagner*, No. 1:17-cv-474, 2018 WL 612793, at *5 (W.D. Mich. Jan. 2, 2018) (eight-day mattress deprivation did not establish a retaliation claim because deprivation was not "sufficiently adverse"), *report and recommendation adopted*, 2018 WL 583407 (W.D. Mich. Jan. 29, 2018); *Branch v. Bauman*, No. 2:21-CV-16, 2014 WL 413512, at *8 (W.D. Mich. Feb. 4, 2014) (seven-day mattress deprivation "not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct").

Sergeant Lawler also asserts that, even assuming Mr. Wesley did not receive a replacement mattress for three days after his original mattress was taken, it would not rise to the level of an adverse action that would deter a person of "ordinary firmness." This argument is well-taken. In this case, Mr. Wesley does not establish—much less even allege—that Sergeant Lawler refused to provide him a replacement mattress or prevented him from obtaining a mattress. According to Mr. Wesley's deposition testimony, he complained to Correction Officer Brent Winborn, other unidentified correction officers, and fellow inmates about his mattress. (*See* Wesley Dep. 30:6-24;

7

31:3-17.) When Mr. Wesley asked Corporal Hickerson for a replacement mattress, Corporal Hickerson secured one that same day. (*See* Wesley Dep. 31:19-25; 32:1-20.) Although Mr. Wesley takes issue with the fact that Sergeant Lawler did not *personally* replace another mattress after confiscation and that the Safety Sanitation Department did not replace his mattress, he does not present any evidence rebutting Sergeant Lawler's contention that he did not prevent Mr. Wesley from obtaining a mattress, or that Mr. Wesley asked Sergeant Lawler for a mattress and Sergeant Lawler refused. (ECF No. 62, PageID#502.)

Finally, the record reflects that Mr. Wesley was not deterred from continuing to engage in the protected conduct because he continued to attempt to file grievances regarding his mattress seizure after the alleged conduct occurred. (*See* Wesley Dep. 22:1-6, 33:1-19); *see, e.g.*, *Gordon v. Van Schoyck*, No. 3:17-CV-721, 2020 WL 906346, at *6 (N.D. Ohio Feb. 25, 2020) (finding that plaintiff had not satisfied second element where "none of the[] acts deterred [plaintiff] from continuing to engage in protected activity by filing grievances and ICRs"); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001) (finding that plaintiff's placement on modified access to grievance procedure did not deter him from engaging in protected conduct because "he continued to attempt to file grievances"). Accordingly, Mr. Wesley failed to demonstrate that any adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct.

### 3. There is no causal connection between Mr. Wesley's alleged protected conduct and the alleged adverse action.

Mr. Wesley does not offer evidence of any causal connection between the alleged adverse actions and his grievance. Under the causation element of a claim for retaliation, the subjective motivation of the decisionmaker is at issue – *i.e.*, "the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity." *Smith v. Campbell*, 250 F.3d 1032,

8

1038 (6th Cir. 2001) (citing *Thaddeus-X*, 175 F.3d at 399). Temporal proximity alone is insufficient to meet the plaintiff's burden to show that the filing of grievances was a substantial or motivating factor for the alleged adverse action. *See Smith*, 250 F.3d at 1038; *Coleman v. Bowerman*, 474 F. App'x 435, 438 (6th Cir. 2012) (holding "temporal proximity alone is insufficient to show a causal connection in his case because [the plaintiff] has presented no other proof of retaliatory motive"); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) ("Without more, however, [plaintiff's] conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."). Conclusory allegations of retaliatory motive, unsupported by material facts, are not sufficient to state a claim under 42 U.S.C. § 1983. *Harbin-Bey*, 420 F.3d at 580.

Here, Mr. Wesley is unable to show that Sergeant Lawler acted with a retaliatory motive beyond the fact that Sergeant Lawler's execution of the subpoena and the seizure of his mattress happened at the same time. (*See* Wesley Dep. 28:16-20.) But Mr. Wesley's own deposition testimony indicates that his mattress was confiscated *before* he complained to the Correction Officers regarding the search of his cell. (Wesley Dep. 28:23-25; 29:1-3; 29:6-8; 29:23-25; 30:1-5.) And Mr. Wesley fails to point to any conversation that led Mr. Wesley to believe that Sergeant Lawler took his mattress for retaliatory reasons. (*See* Wesley Dep. 28:23-25; 29:1-8.)

Mr. Wesley, however, asserts that he can prove Sergeant Lawler acted in retaliation against Mr. Wesley's complaints about the execution of the subpoena because Mr. Wesley has "several" eyewitness, including but not limited to, Correction Officer Winborn and pretrial detainee Michael Davis, and that these individuals would be "called to testify at trial." (ECF No. 62, PageID#504.) Mr. Wesley, however, fails to attach any affidavits to support his claim that these individuals would attest to his version of events. This bare assertion therefore merely amounts to another conclusory

9

allegation. Indeed, a promise that witnesses will supply testimony supportive of his claim at trial is insufficient to defeat a summary judgment motion. *See Del Carmen Guadalupe v. Agosto*, 299 F.3d 15, 23 (1st Cir. 2002) ("A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial."); *SG Industries, Inc. v. RSM McGladrey, Inc.*, No. 10-cv-1119, 2011 WL 6090247, at *5 (E.D. Mich. Dec. 7, 2011) ("[I]n the face of Defendant's properly supported motion, Plaintiff cannot defeat summary judgment by positing the mere hope that Defendant's expert will establish the matters upon which Plaintiff has the burden of proof."). Under Federal Rule of Civil Procedure 56, once the moving party makes a properly supported motion for summary judgment seeking dismissal of a claim, the plaintiff must come forward with admissible evidence supportive of his claim. *Matsushita*, 475 U.S. at 587.

As stated above, while evidence of temporal proximity between filing grievances and an adverse action may provide some support for establishing retaliatory motivate, the Sixth Circuit "has been reluctant to find that such evidence alone establishes retaliatory motive." *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010) (citation omitted). Here, Mr. Wesley does not present any other evidence demonstrating an adequate nexus between his protected conduct and the alleged retaliation. *See Skinner*, 89 F. App'x at 580 ("Without more, however, his conclusory allegations of temporally proximity are not sufficient to show a retaliatory motive.").

Moreover, even if Mr. Wesley engaged in protected conduct under the First Amendment that resulted in actual adverse action, he failed to overcome Sergeant Lawler's showing that the same action would have been taken even without the protected activity. If an alleged adverse action was taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *See Thaddeus-X*, 175 F.3d at 399 ("If the

defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."). Both Sergeant Lawler and Officer Johnston stated in their declarations that the motivating factor in taking Mr. Wesley's mattress was consistent with CCCC's policy regarding altered or damaged mattresses, and that they did not take Mr. Wesley's mattress because of any complaint Mr. Wesley made regarding the subpoena. (*See* Johnston Decl. ¶9; Lawler Decl. ¶10.) Sergeant Lawler and Correction Officer Johnston have further declared that they have only taken an inmate's mattress if it was damaged or altered, or if the inmate was not medically approved to have an extra mattress. (Johnston Decl. ¶9; Lawler Decl. ¶10.)

Significantly, Mr. Wesley does not contradict Sergeant Lawler's testimony that he took the mattress for a legitimate reason. (Lawler Decl. ¶10.) And despite outlining the CCCC's disciplinary policy regarding destruction of prison property, Mr. Wesley does not offer any evidence contradicting Sergeant Lawler's testimony that he has never taken any inmate's mattress—including Mr. Wesley's mattress—out of retaliation or to punish them. (*Id.*) He also does not offer evidence contradicting that the only time Sergeant Lawler took an inmate's mattress was because the mattress was damaged, because it had become contraband, or because it posed a safety risk. (*Id.*) He further fails to address Officer Johnston's similar testimony. (Johnston Decl. ¶9.) And as set forth above, Mr. Wesley's deposition testimony reflects that his mattress was taken *before* he complained about the cell search. (*See* Wesley Dep. 28:23-25; 29:1-3; 29:6-8; 29:23-25; 30:1-5.)

Finally, Mr. Wesley attempts to dispute the credibility of Officer Johnston's testimony. (*See* ECF No. 62, PageID#502-04.) Specifically, he focuses on whether Officer Johnston actually escorted him to the law library on May 7, 8, 9, and 10 of 2019. (*See id.*) According to Mr. Wesley,

11

Officer Johnson's testimony is fabricated because Officer Johnston could not have escorted Mr. Wesley to the law library on these dates in light of the fact that Mr. Wesley did not have law library access until October 5, 2019. (*See id.*) Mr. Wesley attaches logbooks along with other materials in his opposition memorandum in support of this argument. (ECF No. 62-1.)

Mr. Wesley mischaracterizes Officer Johnston's testimony. Officer Johnston's declaration merely states that he was working at the CCCC on those dates, and that his responsibilities on those days *would have been* to escort Mr. Wesley to the law library and other units within the jail. (Johnston Decl. ¶ 17) (emphasis added). Thus, Mr. Johnston stated that "*at no point during any of [his] shifts*" did he hear any complaint from Mr. Wesley about having a mattress. (*Id.*) (emphasis added)) Mr. Wesley thus offers no evidence demonstrating that he complained to Officer Johnston, or that Officer Johnston denied him a mattress.

Once Sergeant Lawler put forth evidence, Mr. Wesley was required to present "significant probative evidence" to defeat the motion for summary judgment on this ground. *Anderson*, 477 U.S. at 248. Here, he has failed to meet this burden. Accordingly, Sergeant Lawler is entitled to summary judgment on Mr. Wesley's retaliation claim because Mr. Wesley cannot establish the third element of his retaliation claim.[3] *Celotex*, 477 U.S. at 323.

---

[3] Mr. Wesley contends that Sergeant Lawler's declaration should be discounted because his response to several allegations in the Complaint was that he "was without knowledge sufficient to form a belief." (ECF No. 62, PageID#4999 (citing ECF No. 22.)) Thus, Mr. Wesley argues that Sergeant Lawler should not be able to claim knowledge of any facts in his declaration. (*See id.*) But "unless the non-moving party submits evidence which raises an issue of material fact concerning the truth of the affidavits, the evidence submitted by the moving party must be accepted as true." *Stewart v. Wilkinson*, No. 2:03-cv-0687, 2009 WL 1322307, at *2 (S.D. Ohio May 8, 2009) (citing *Kemper v. Am. Broad. Companies*, 365 F. Supp. 1275, 1277 (S.D. Ohio 1973)). Here, I decline to discount Sergeant Lawler's declaration because Mr. Wesley offers no such evidence. *Gillmore v. Proctor & Gamble Co.*, 417 F.2d 615, 617 (6th Cir. 1969) (holding that the non-moving party must deny under oath the allegations contained in the affidavits, and his failure to do so may result in the entry of summary judgment against him).

### C. Qualified Immunity

Sergeant Lawler finally argues that he is entitled to qualified immunity as to Mr. Wesley's retaliation claim. (ECF No. 59-1, PageID#477-78.) Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). There are two elements to the analysis: (1) whether the facts, viewed in the light most favorable to plaintiff, make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. *Id.* at 232. A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

Once a defendant properly raises a defense of qualified immunity, the burden shifts to plaintiff to demonstrate that defendant is not entitled to qualified immunity. *Livermore ex rel Rohn v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). However, the bald assertion of qualified immunity is not sufficient to shift the burden. "A defendant bears the initial burden of putting forth facts that suggest that suggest that he was acting within the scope of his discretionary authority." *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013). Once a defendant has done so, "[t]he burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (citation and internal quotation omitted).

Here, Sergeant Lawler met his burden of establishing qualified immunity. As discussed at length above, Mr. Wesley has not established that his constitutional rights were violated. And there is no possibility that Sergeant Lawler could have known that his actions at the time violated a

13

clearly established constitutional right. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 649 (1987). This requires a plaintiff to "identify with 'a high degree of specificity' the legal rule that a government official allegedly violated." *Beck v. Hamblen County*, 969 F.3d 592, 599 (6th Cir. 2020) (quoting *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019)). In using case law to establish a legal rule, "a plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Arrington-Bey* v. *City of Bedford Heights*, 858 F.3d 988, 993 (6th Cir. 2017) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). A case, however, "need not be 'on all fours' with the plaintiff's case." *Beck*, 969 F.3d at 599 (quoting *Vanderhoef*, 938 F.3d at 278).

Here, Mr. Wesley fails to identify any case with a similar fact pattern that would have given "fair and clear warning" to Sergeant Lawler about what the law requires. *Arrington-Bey*, 858 F.3d at 992-93 (quoting *White*, 580 U.S. at 79); (*see generally* ECF No. 62.) Indeed, Mr. Wesley wholly fails to respond to Sergeant Lawler's qualified immunity argument in his opposition brief. (*Id.*) And it does not appear Sergeant Lawler could have known that his actions at the time violated a clearly established constitutional right because Sergeant Lawler stated that he was acting consistent with CCCC policy in removing a damaged or altered mattress. (*See* Lawler Decl. ¶¶ 6-7.) Thus, even if Sergeant Lawler had a retaliatory motive for confiscating Mr. Wesley's mattress, Mr. Wesley does not establish that Sergeant Lawler's actions were not justified under the circumstances. Nor is there any evidence demonstrating that Sergeant Lawler prevented Mr. Wesley from receiving a replacement mattress after his original mattress was removed. Accordingly, I recommend that the Court grant Sergeant Lawler's motion for summary judgment.

14

### IV. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court GRANT Defendant's Motion for Summary Judgment (ECF No. 59).

Date: 3/6/2024                                                                            s/*Jennifer Dowdell Armstrong*
                                                                                         Jennifer Dowdell Armstrong
                                                                                         United States Magistrate Judge

### V. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).

Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).